[Cite as *Graves. v. Murillo*, 2018-Ohio-3229.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| AARON J. GRAVES | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| LUCIA MURILLO | : | Case No. 18-CA-3 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County
Court of Common Pleas, Domestic
Relations Division, Case No. 2015
DR 00020

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      August 10, 2018

APPEARANCES:

For Plaintiff-Appellant

ELIZABETH J. ZUERCHER
The Zuercher Law Firm, LLC
490 City Park Avenue, Suite D
Columbus, Ohio 43215

For Defendant-Appellee

ANDREW S. GROSSMAN
JOHN H. COUSINS IV
Grossman Law Offices
32 W. Hoster Street, Suite 100
Columbus, Ohio 43215

Co-Counsel for Defendant-Appellee

SUSAN M. SURIANO
The Suriano Law Firm LLC
4200 Regent Street, Suite 200

Columbus, Ohio  43219

*Baldwin, J.*

{¶1}   Plaintiff-appellant Aaron J. Graves appeals from the December 14, 2017 Opinion of the Licking County Court of Common Pleas, Domestic Relations Division.

STATEMENT OF THE FACTS AND CASE

{¶2}   On January 8, 2015, appellant filed a "Complaint to Establish Father-Child Relationship and an Allocation of Parental Rights and Responsibilities" against appellee. In his complaint, he alleged that he was the biological father of twin girls born on June 20, 2006 and that appellee was the natural mother of the children. On March 3, 2015, the Magistrate issued temporary orders. The temporary orders designated appellee as the temporary residential parent and legal custodian of the children and designated appellant as the obligor for purposes of child support.  The Magistrate ordered that appellant "shall not pay temporary child support" to appellee and stated that this constituted a downward deviation from the child support guideline. The Magistrate found that the deviation was warranted based on the disparity in the parties' incomes, the relative financial resources of the parties and appellee's' request that appellant not be ordered to pay child support and that she not be reimbursed by appellant for the children's uninsured health care costs, day care expenses, or extracurricular activity fees.

{¶3}   An Agreed Judgment Entry-Decree of Paternity was filed on March 9, 2015. The parties entered in a Shared Parenting Plan that resolved all issues except for child support, allocation of dependency exceptions and attorney fees.  The Plan, which was filed on February 22, 2016, states that the children will reside with appellee "at all times"

subject to appellant having parenting time on Mondays and Wednesdays and every other weekend at specified times. The Plan further states, in relevant part, as follows:

> The children shall reside with Mother at all times, subject the Father's exercise of parenting time as follows: Father shall have parenting time beginning Mondays after school until Tuesday mornings before school; Wednesday after school until Thursday mornings before school; and alternating Fridays after school until Sundays at 6:00 p.m. During summer Break, Father's parenting time shall begin when he is off work on his Mondays and Wednesdays and shall end at 9:00 a.m. the following day, unless otherwise agreed upon by the parties, and the father's weekend shall be from 3:30 p.m. on Friday until 9:00 a.m. on Tuesday. The summer break shall be defined as after school the day that school lets out for the summer until seven days prior to the school year commencing.

{¶4} A two day hearing before a Magistrate was held in July of 2016. The following evidence was adduced at the hearing.

{¶5} Appellant Aaron J. Graves and appellee Lucia Murillo met in 2004 when appellant became appellee's personal trainer. At the time, appellee, who graduated in 1990 from Syracuse University with a degree in fashion design, was working at Tween Brands, Inc. and was the Director of Casual Bottoms. At the time of hearing, appellee was the senior Vice President of Design. She had been employed by Tween Brands, Inc./Justice since 2002.

{¶6} Appellee had a gross annual income of $856,059.62 for the 2013 tax year, $492,795.41 for the 2014 tax year, and $491,254.54 for the 2015 tax year. The average

of the three years is approximately $613,369.00. Her 2016 income through June 25, 2016 was approximately $306,717.00. She earns a base gross income of $15,648.08 which is paid to her every other week, for a gross annual base salary of $406,850.08.

**{¶7}** The children have asthma and allergies and appellee pays for their health insurance, and any of their uninsured medical expenses, drug co-pays and any other healthcare needs. She pays approximately $933.00 a year to cover the two children under her employer-provided health insurance. According to appellee, appellant does not agree with the drugs that the allergist has the children on. Appellee's yearly expenses for the children total approximately $38,004.00. In 2015, her work-related child care costs totaled approximately $15,123.00. Of the $15,123.00, appellee indicated that $2,235.00 was for morning day care used exclusively by appellant. Appellee also has a housekeeper and a dog walker. Other than her mortgage and car loan, she is debt-free.

**{¶8}** Appellant, who has a degree in Kinesiology from Bowling Green University, has worked at Fitness Matters (formerly Columbus Fitness Consultants) since the fall of 2000 as a kinesiologist. Appellant is the senior therapist at Fitness Matters and his pay is determined by the number of "touches" that he has with clients. He was paid approximately $42.62 an hour and had a gross income of $51,631.20 for 2013 and $53,079.20 for 2014. Appellant had total gross earnings of approximately $53, 611 for 2015. The average of the above three gross annual incomes is $52,773.73. Appellant has been an "Uber" driver since 2015 and had gross earnings as a driver of approximately $1,500.00 for the 2015 tax year. His average monthly household expenses totaled $5,021.00. Of this total, $1,237.00 was for minimum credit card payments. Appellant claimed that a majority of the purchases were incurred while the parties were residing

together. He submitted an anticipated monthly budget to the trial court of $7,909.00 that included increased costs for rental of a larger residence and purchase of newer vehicle. He does not maintain health care coverage for the children and does not have work or education-related child care expenses for them.   He testified that he falls short every month financially.

{¶9}   At trial, Travis Timmons, the owner of Fitness Matters, testified that he considered appellant part time because he did not work over forty hours a week and that if appellant wanted more hours or "touches", there "would be options for that."  Hearing Transcript at 363-363. Timmons testified that appellant was "fully engaged" and that no one at the firm worked exactly 40 hours a week. When asked, Timmons testified that appellant had not come to him over the last three years and asked for more touches. He further testified on cross-examination that appellant would accept new clients when his schedule allowed it.    According to Timmons, the busiest times were from 7:30 or 8:00, depending on the day, until 2:30 or 3:30 at the primary physical location and from mid-morning through 3:30 or 4:00 at Quantum, their offsite location.

{¶10} In 2015, appellant became a licensed real estate agent. He had gross earnings or real estate commissions of $4,537.50 for the 2015 tax year and, through June 24, 2016, had earnings of $6,853.00. As of the final day of the hearing, appellant had sold four residences and was assisting five buyers who were not exclusive clients at that time. He had no listings as of such time.

{¶11} Appellant and appellee became romantically involved shortly after meeting in 2004 and appellant moved into appellee's home in 2005. Appellee had purchased the home in Gahanna for approximately $150,000.00. Prior to moving in, appellant had been

living with his mother because of significant credit card debt while he rented out a four bedroom, two and one half bath, 1,840 square foot home that he owned in Pickerington, Ohio. Appellant was renting out the home, but after expenses, has no net income from the property.   While appellant paid all of the utility bills for the Gahanna house, appellee covered the other expenses.

**{¶12}** Approximately six months after dating, appellee became pregnant with twin girls.   The pregnancy was a high risk pregnancy and appellee, who was on bedrest for a period of time, continued to work at home because she knew that she would be financially responsible for the children. During such time, appellant cooked, did laundry and, along with his father, remodeled appellee's home for the children using material paid for by appellee. He also did other household chores. According to appellee, appellant was very upset about the pregnancy and stopped talking to her for two weeks.   Appellee gave appellant the option of leaving, but eventually he began speaking to her again and proposed to appellee when she was eight months pregnant. Appellee was surprised and confused by the proposal and the two never married. The girls were born in June of 2006. After their birth, appellant adjusted his work schedule so that he could spend more time with the children, particularly during appellee's work hours.

**{¶13}** In 2010, appellee purchased a home in Granville, Ohio for $440,000.00 due to its excellent school system. The house has five bedrooms, a guest bedroom and 3 1/2 bathrooms. Appellee made a down payment of about $80,000.00 or $90,000.00 and the house was in her name only.  She also spent approximately $30,000.00 on remodeling the house. Appellant continued paying for the utilities and appellee covered the other expenses. Appellee picked up the bill when they participated in any kind of activity or

dinner and gave appellant her credit card to use for the house or groceries or necessities for the children.

**{¶14}** Appellee has monthly living expenses for her and the children of approximately $12,718.00. She buys the children clothing for both houses. During the period from 2013 through 21015, appellee expended an average of $39,833.00 per year on the children for child care, clothing and school and activity expenses including, but not limited to, Irish dance lessons, horseback riding, and cheerleading. She also paid for summer camps, lessons and swim team.

**{¶15}** During the time that appellant lived with appellee and their children, he traveled together with them to Chicago, Cincinnati and other locations in Ohio and to Florida. The parties and their children would fly, rent a car, stay in hotels, dine out at restaurants and visit theme parks and other attractions. The family also had a country club membership paid for by appellee that appellant could enjoy, but appellee dropped the same a year after appellant moved out. Appellee testified that she had two cars so that one of the cars could be used by any babysitters for transporting the children. While the children were in daycare, they also had nannies and babysitters. They had a full time nanny for a period after the children were born. Appellant would sometimes pick up the children from school at 3:30 when he was off early from work, but appellee was not able to do so as much due to work. There was also testimony that birthday parties for the children included pony rides, gymnastics, animals from the Columbus zoo and a fire engine and that while the family lived together, the children received significant presents from appellee. Appellee has enrolled the children in dance lessons, competitions and performances and in various summer camps at a cost of thousands of dollars a year. She

has continued traveling with the children to Florida for vacation once or twice a year and generally stays in her brother's condo free of charge.  In addition, appellee provides both of the children with electronic devices for their personal use, including Kindles, laptops, cell phones and Fitbits. They use these devices at both residences.

{¶16}  Appellant moved out of the home that the parties shared in 2013.  Around two years before he moved out, appellant had gone to see an attorney and paid a $5,000.00 retainer fee. After his move, appellant rented a 736 square foot home with two bedrooms and one bathroom in Granville, Ohio to be near the children and in the same school district. The two continued jointly caring for the children and started following a parenting arrangement.  He coaches them in sports and takes them camping and on bike rides and skiing in New York every year for a couple of nights.

{¶17}  There was testimony at trial that appellant's current living expenses and debt payments exceeded his total disposable monthly income. He often cooks for the children when they are with him.  There also was testimony that appellant had flown with his female friend to Florida multiple times and dined out with her at expensive restaurants.

{¶18}  Following the trial, both parties filed closing arguments. The Magistrate, in a Decision filed on November 30, 2018, recommended, in part, that appellant be designated the child support obligor but that his support obligation be deviated to zero. Appellee filed objections and the trial court, as memorialized in an Opinion filed on December 14, 2017, overruled the objections. Pursuant to a Judgment Entry filed on December 14, 2017, the trial court approved and adopted the Magistrate's Decision.

{¶19}  Appellant now appeals from the December 14, 2017 Opinion, raising the following assignment of error on appeal:

{¶20} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DESIGNATED GRAVES AS THE CHILD SUPPORT OBLIGOR."

I

{¶21} Appellant, in his sole assignment of error, argues that the trial court abused its discretion when it designated him as the child support obligor. We disagree.

{¶22} In *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989), the Supreme Court of Ohio determined an abuse of discretion standard is the appropriate standard of review in matters concerning child support. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶23} Child support is generally calculated using the child support guidelines and worksheet. R.C. 3119.03. This figure is rebuttably presumed to be the correct amount of child support, although the trial court may deviate from that amount. R.C. 3119.03. R.C. 3119.24 governs child support under shared parenting orders and states the following:

(A)(1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because

of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.

(2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination.

(B) For the purposes of this section, "extraordinary circumstances of the parents" includes all of the following:

(1) The amount of time the children spend with each parent;

(2) The ability of each parent to maintain adequate housing for the children;

(3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant;

(4) Any other circumstances the court considers relevant.

**{¶24}** However, when the parents' combined gross income is greater than $150,000 a year, as it is here, R.C. 3119.04(B) provides as follows:

If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect

to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

**{¶25}** A court may consider any of the following factors in determining whether to grant a deviation pursuant to R.C. 3119.23:

(A)     Special and unusual needs of the children;

(B)     Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;

(C)     Other court-ordered payments;

(D)     Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the

applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;

(E)     The obligor obtaining additional employment after a child support order is issued in order to support a second family;

(F)     The financial resources and the earning ability of the child;

(G)     Disparity in income between parties or households;

(H)     Benefits that either parent receives from remarriage or sharing living expenses with another person;

(I)     The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

(J)     Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

(K)     The relative financial resources, other assets and resources, and needs of each parent;

(L)     The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

(M)     The physical and emotional condition and needs of the child;

(N)     The need and capacity of the child for an education and the
educational opportunities that would have been available to the child had
the circumstances requiring a court order for support not arisen;

(O)     The responsibility of each parent for the support of others;

(P)     Any other relevant factor.

{¶26} In the case sub judice, the temporary orders entered on March 3, 2015
designated appellant as the child support obligor for purposes of temporary child support.
The Magistrate, in his Decision, recommended that the appellant remain the child support
obligor. The Magistrate, in his Decision, stated, in relevant part, as follows:

> The Magistrate finds from the evidence admitted into the record that
> the Defendant has been and is the parent who bears the primary
> responsibility for providing the day-to-day care and maintenance of the
> children.  The Magistrate finds from reviewing the parties' agreed shared
> parenting plan filed on January 22, 2015, that the Plaintiff's role in this
> regard will continue.

> The Magistrate further finds that the Plaintiff's contention that the
> Defendant should be ordered to essentially make him whole by reimbursing
> him for the credit card charges he claimed he incurred while residing with
> her is not an appropriate reason to designate the Defendant as the child
> support obligor.

> There are several bases for this determination. First, the Plaintiff
> failed to present any documentary evidence corroborating his claim.
> Second, it seems to the Magistrate that the Plaintiff voluntarily chose to

make the credit card purchases he made while residing with the Defendant. No evidence was presented establishing that the Defendant either made him do this or expected this of him. Third, to the extent that the Plaintiff's claim arises out of the breakup of an unmarried couple who cohabited, the Court does not have subject matter jurisdiction to decide the merit of such a claim.

The Magistrate is unable to find merit to the Plaintiff's contention that the Defendant should be designated as the child support obligor and be ordered to pay him child support so he can obtain and maintain a more substantial residence and provide for the children in a manner like they are accustomed to when they are with the Defendant. The contents of Plaintiff's exhibit 15 as well as the Plaintiff's testimony regarding this exhibit and his living circumstances lead the undersigned to find that the Plaintiff anticipates upgrading his standard of living. Doing so, according to Plaintiff's exhibit 15, will result in practically doubling his monthly living expenses.

The Plaintiff's testimony purports to show that it would benefit the children for him to have an enhanced standard of living, suggesting that they are somehow deprived or disappointed to spend time in a residence that is not comparable to the Defendant's home. The Magistrate finds that the overall evidence fails to establish that this is an issue or concern to the children or the Defendant. The Magistrate further finds that it would be in

the children's best interest to see that everyone is not as fortunate to have the same standard of living and material benefits as they do.

**{¶27}** After appellant filed objections, the trial court approved and adopted the Magistrate's Decision. The trial court, in its December 14, 2017 Opinion, noted that the primary basis for appellant's objection was the disparity in the parties' income and that appellant "asserts that in order for the children to have the same lifestyle at both homes the Defendant should be the obligor and pay guideline support." The trial court further stated, in relevant part, as follows:

> The Magistrate set out the basis for his determination as to who should be the obligor and obligee at Pages 27 and 28 of his Decision. More specifically, the Magistrate found that designating Plaintiff as the obligor would serve the children's best interest; that the Defendant was the parent who bore the primary responsibility for the day to day care of the children; and that the parental roles would remain the same under the parties' Shared Parenting Plan.

> Further, the Magistrate found that there was no merit in Plaintiff's claim that the Defendant should pay on his credit card debt or that child support should be paid to the Plaintiff in order that he could increase or improve his standard of living.

> In his Decision, the Magistrate explained that he did not find merit in the argument that the children were somehow deprived when spending time with the Plaintiff due to his house not being as large and (sic) the Defendant. Moreover, the Magistrate found that it might be in the children's best interest

to observe that not everyone is fortunate enough to enjoy the same standard of living and material benefits as they do with Defendant.

The Court could not find any case law to establish that the parent who earns the most income should be designated the obligor for child support purposes.

**{¶28}** The trial court agreed, and so does this Court, with the Magistrate's findings that appellee is the parent who bore the primary responsibility for the day to day care and maintenance of the children.     At trial, appellee testified that she was home for dinner with the children on her days and that she was the parent who primarily stayed home with them for school snow days, illnesses and doctor appointments. Appellee also pays for the children' health insurance and non-covered health expenses, school fees and supplies and child care.

**{¶29}** Contrary to appellant's assertion, the trial court did consider the standard of living and disparity of income between the parties. The trial court found that there was no evidence that the children were deprived or did not have their needs met when they were with their father and that they slept in the same room at both houses, even though appellee's house was substantially larger then appellant's and had more bedrooms, had friends over to both houses, including overnight, and appeared to enjoy spending time at both houses.  The Appellee did all of the clothes shopping for the children and provided the same sets of clothes and supplies for both households. There was testimony that both houses were appropriate, safe and clean, furnished and had food for the children. There also was testimony that both parties engaged in special activities with the children, including vacations, and that the children had the same opportunities and routines at both

houses. The children's nanny testified that she sometimes watched them while at appellant's home and that appellee paid her and that the girls had the same clothes and electronic gadgets at both houses and were appropriately cared for in both. There was evidence that appellee paid for nearly all of the children's' expenses. She pays for their health insurance coverage, any uninsured health care expenses, child care expenses and school and activity fees. She also buys clothes for both homes. There was no evidence that the children wanted for anything while at either house. As noted by the trial court, "[t]here was no evidence presented that the children were somehow deprived when they were with their father [appellant] To the contrary, the evidence showed that the girls slept in the same room at both houses, had friends over tot both houses, and appeared to enjoy spending time at both houses." The trial court further found that appellant's home, while smaller than appellee's, was adequate for the needs of appellant and the children.

{¶30} Based on the foregoing, we find that the trial court did not abuse its discretion in designating appellant as the child support obligor. The trial court's decision was not arbitrary, unconscionable or unreasonable.

{¶31} Appellant's sole assignment of error is, therefore, overruled.

{¶32} Accordingly, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division is affirmed.

By: Baldwin, J.

John Wise, P.J. and

W. Scott Gwin, J. concur.